UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAWNORA NAVARRO,

                              Plaintiff            DECISION AND ORDER

-vs-

                                                18-CV-6192 CJS

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL SECURITY[1],

                              Defendant.
_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying the application of Shawnora Navarro ("Plaintiff") for Social Security Disability Insurance ("SSDI") Benefits and Supplemental Security Income ("SSI") Benefits. Plaintiff claims to be completely disabled due a variety of ailments, including anxiety, post-traumatic stress disorder ("PTSD") and knee pain, but the Commissioner found otherwise. Now before the Court is Plaintiff's motion for judgment on the pleadings (Docket No. [#9]) and Defendant's cross-motion [#13] for the same relief. For the reasons explained below, Plaintiff's application is granted, Defendant's application is denied, and this matter is remanded for further administrative proceedings.

## FACTUAL BACKGROUND

---

[1] The president nominated Andrew M. Saul to be Commissioner of Social Security and the Senate confirmed his appointment on June 4, 2019. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

1

The reader is presumed to be familiar with the facts and procedural history of this action. The Court will briefly summarize the record as necessary for purposes of this Decision and Order.

On April 16, 2015, Plaintiff filed applications for SSI benefits and SSDI benefits, claiming that she became totally disabled on September 2, 2009. Plaintiff had previously filed other applications for benefits that were denied. After the Social Security Administration denied the instant claim initially, a hearing was held before an administrative law judge ("ALJ") on November 14, 2016, at which Plaintiff appeared with her attorney. The ALJ took testimony from Plaintiff and from a Vocational Expert ("VE"). During the hearing, the ALJ identified a gap in the record, and, at his direction, Plaintiff's counsel subsequently obtained and submitted the missing treatment records.

On February 23, 2017, the ALJ issued his decision, denying Plaintiff's applications and finding that she was not disabled at any time between June 29, 2013,[2] and the date of the decision. In pertinent part, applying the familiar five-step analysis for evaluating disability claims, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 29, 2013; that she had serious impairments consisting of "osteoarthritis of the left knee, status-post arthroscopy and total knee arthroplasty (TKA); obesity; and anxiety disorder"; that such conditions did not meet or equal a listed impairment; that she had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: (1) no climbing of ropes, scaffolds or ladders; (2) occasional climbing of ramps or stairs; (3) occasional stooping, crouching, balancing, kneeling and crawling; (4) limited to simple tasks; (5) limited to simple instructions and simple work-related

---

[2] The ALJ indicated that this was "the first possible alleged onset date." Transcript 18

decisions; (6) occasional interaction with supervisors, co-workers, and the public; (7) limited to a static work environment, with few changes in the work setting; (8) no teamwork or tandem tasks; and (9) the claimant requires the use of a cane for ambulation[;][3]

that she was unable to perform any past relevant work; and that with the RFC described above she was still able to perform several other jobs identified by the VE, including "electronics worker," DOT 726.687-010, "small parts assembler," DOT 706.684-022, and "electrical accessories assembler," DOT 729.687-010.

In making his RFC determination, the ALJ reviewed the medical evidence of record, and, in particular, the opinion evidence from treating psychiatrist Dr. Ronald Spurling, M.D. ("Spurling"), who indicated that Plaintiff was unable to work due to psychological symptoms, and the opinion evidence from a non-treating, non-examining agency psychologist, T. Inman-Dunton, Ph.D. ("Inman-Dunton"), who indicated that Plaintiff was capable of "low stress, unskilled work."[4]

The ALJ indicated that he gave "moderate weight" to Inman-Dunton's opinion, even though, as the ALJ noted, it "pre-date[d] the receipt of a large portion of the evidence available at the hearing levels, in particular, Exhibits 5F through 22F."[5] In other words, Inman-Dunton's opinion was based on less than the entire medical record. The ALJ's decision purports to briefly summarize Inman-Dunton's findings, but does not explain why it assigns "moderate weight"[6] to Inman-Dunton's conclusion, except to say,

---

[3] Transcript 24
[4] Transcript 100
[5] Transcript 26
[6] Transcript 26

3

in circular fashion, that it was consistent with the RFC.[7]

On the other hand, the ALJ gave only "limited weight" to Dr. Spurling's opinions. Significantly, the ALJ did so largely because he found that Spurling's opinions were inconsistent with the results of Spurling's own mental status examinations of Plaintiff during office visits. *See*, Transcript 27 ("[T]he evidence does not demonstrate substantial limitations in the performance of such tasks, given the claimant's largely normal mental status examinations.") (emphasis added); *see also, id.* ("Dr. Spurling overstates the level of limitations in each category, given the objective evidence.") (emphasis added); *id.* (referring to the "generally unremarkable mental status examinations after June 28, 2013," as reported by Dr. Spurling) (emphasis added); *id.* (interpreting the results of one of Spurling's mental status examinations of Plaintiff (Ex B#F, p. 3) as being inconsistent with Spurling's opinions). The ALJ also asserted that Spurling had not explained the basis for his opinions that Plaintiff could not work more than four hours per day, and that she would likely miss more than four days of work per month due to mental-health symptoms.[8]

An unusual feature of the administrative record, which may explain the ALJ's heavy reliance on the opinion of Inman-Dunton, who neither treated nor examined Plaintiff, is that the Commissioner did not obtain a consultative psychological (or physical) examination.[9]

---

[7] Transcript 26 ("Because the evidence is consistent with occasional interaction with supervisors, co-workers and the public, without teamwork or tandem tasks, the undersigned gives this opinion moderate weight.").
[8] Transcript 27
[9] The record alludes to the fact that in connection with an earlier application for benefits by Plaintiff, the Commissioner had her examined by both a consultative psychologist and a consultative internist.

4

In the ALJ's decision, he also found that Plaintiff's statements about the severity of her symptoms were not entirely consistent with the other evidence of record.[10] The ALJ's discussion on this point, however, focused on her physical complaints.[11]

After receiving the ALJ's unfavorable ruling, Plaintiff appealed to the Appeals Council. However, the Appeals Council declined to review the ALJ's decision.

On March 12, 2018, Plaintiff commenced this action. On November 12, 2018, Plaintiff filed the subject motion [#9] for judgment on the pleadings. Plaintiff contends that the Commissioner's decision should be reversed for the following reasons: 1) the ALJ did not properly apply the treating physician rule to Dr. Spurling's opinions; 2) the ALJ did not properly evaluate Plaintiff's credibility; and 3) the ALJ "failed to determine the severity" of Plaintiff's PTSD condition.

STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*

---

Transcript 111-113, 119-120, 131-132. However, the reports of those examinations are not contained in this record, nor are they referred to in the ALJ's decision.
[10] Transcript 25
[11] Transcript 25-26

5

Determination of the Severity of Plaintiff's PTSD Condition

Plaintiff contends that the ALJ erred at step two of the five-step sequential analysis, because he made no "finding as to whether Ms. Navarro's PTSD was severe."[12] Plaintiff contends that this error was particularly egregious, since PTSD was "the primary condition for which Dr. Spurling was providing care to Ms. Navarro."[13]

In considering this argument, the Court observes that the ALJ found that Plaintiff's "anxiety disorder" was a severe impairment, and that PTSD is "an anxiety-related disorder."[14] The ALJ then considered all of Plaintiff's anxiety symptoms under Listing 12.06 at step 3 of the five-step sequential analysis. Therefore, it appears that Defendant is correct to describe Plaintiff's argument as actually being "that the ALJ erred at step two by finding that Plaintiff's anxiety was a severe impairment, but not listing each of Plaintiff's anxiety-related diagnoses as discrete, additional impairments."[15]

The issue, therefore, is whether the ALJ erred by not listing PTSD as a separate impairment at step 2, and by instead including it under the term "anxiety disorder," which he found to be severe. The Court is aware of at least two other similar cases in which courts found no error, because they found that PTSD is included under the term "anxiety disorder." *See, Morris v. Astrue*, No. CA 11-625S, 2013 WL 1000326, at *12 (D.R.I. Feb. 1, 2013) ("Plaintiff argues that the ALJ erred because, while he found depression and anxiety, he omitted PTSD from his list of severe impairments at Step

---

[12] Pl. Memo of Law [#9-1] at p. 25
[13] Pl. Memo of Law [#9-1] at p. 24
[14] Transcript 21
[15] Def. Memo of Law [#13-1] at p. 14

6

Two. However, PTSD is a type of anxiety disorder; therefore, the ALJ's finding that Plaintiff's anxiety was a severe impairment necessarily incorporates PTSD. See DSM—IV—TR at 429, 463–67."), report and recommendation adopted sub nom. *Morris v. Colvin*, No. CA 11-625 S, 2013 WL 997132 (D.R.I. Mar. 13, 2013); *see also, Harper v. Berryhill*, No. 2:18-CV-02117, 2019 WL 1805003, at *4 (W.D. Ark. Apr. 9, 2019) ("The ALJ determined Plaintiff had the severe impairments of spinal disorders, asthma, migraine headaches, obesity, affective disorders, and anxiety disorders. Plaintiff argues the ALJ erred by not finding [an] additional severe impairment[ ] as it relates to her claim[ ] of Post Traumatic Stress Disorder ("PTSD"). . . [However,] [t]o begin with, PTSD is a type of an affective disorder and anxiety disorder."), report and recommendation adopted, No. 2:18-CV-2117, 2019 WL 1804860 (W.D. Ark. Apr. 24, 2019).

However, in this action the ALJ's failure to list PTSD as a separate impairment, and his decision to evaluate Plaintiff's PTSD symptoms under Listing 12.06 along with her other anxiety symptoms, was erroneous. In that regard, effective January 17, 2017, the Commissioner's listings were changed, in that PTSD, which had formerly been included under Listing 12.06, "Anxiety-Related Disorders," was moved to a new listing, Listing 12.15, "Trauma- and Stressor-Related Disorders." *See*, Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, 2016 WL 5341732 (Sep. 26, 2016). The ALJ in this action did not discuss Listing 12.15.

Nevertheless, Plaintiff's argument is not that the ALJ erred in this regard, but, rather, that he failed to indicate the severity of Plaintiff's PTSD at step 2. That

7

assertion is really not accurate, though, since the ALJ implicitly indicated that the PTSD was severe.[16] The ALJ also considered the effects of Plaintiff's PTSD, both at step 3 and when making his RFC determination, and, therefore, Plaintiff's suggestion that the ALJ's failure to list PTSD as a separate severe impairment means that he did not "consider the combined effect" of her impairments is also not accurate.[17] Moreover, any error in this regard at step 3 was harmless, since the Paragraph B criteria and Paragraph C criteria under both Listing 12.06 and Listing 12.15 are the same, and the ALJ's finding that Plaintiff's anxiety did not meet the Paragraph B and Paragraph C criteria under Listing 12.06 is not challenged here. Accordingly, if this error was the only basis for Plaintiff's motion, the Court would likely deny it on the ground of harmless error. However, as discussed below, there are other reasons why this matter must be remanded.

<u>The ALJ's Treatment of Dr. Spurling's Opinion Evidence</u>

Plaintiff next contends that the ALJ failed to properly apply the treating physician rule to Dr. Spurling's opinion evidence. In particular, Plaintiff contends that the ALJ substituted his own medical judgment for Spurling's, based on his own interpretation of the results of Spurling's mental status examinations. The Court agrees that the ALJ erred by disregarding Spurling's opinions based on his own layman's interpretation of the medical data. In that regard, as discussed earlier, the ALJ repeatedly cited the

---

[16] Transcript 21. As already discussed, the ALJ stated that Plaintiff's anxiety disorder was severe, and that her PTSD was "an anxiety related disorder." The cases cited by Plaintiff in her memorandum of law (Docket No. [#9-1] at p. 25) did not involve similar statements by the ALJs in those cases, and are therefore factually inapposite.
[17] Pl. Memo of Law [#9-1] at p. 26

8

results of Spurling's mental status examinations as the primary reason for assigning only limited weight to Spurling's opinions concerning Plaintiff's ability to perform various job-related functions.

Under similar circumstances, another Judge of this district recently ruled that an ALJ had impermissibly substituted her own medical expertise for that of a consultative doctor, based on her own interpretation of the medical evidence:

> In her decision, the ALJ assigned "some weight" to the mental health limitations identified by Dr. Lin, reasoning that "the routine and conservative treatment and <u>normal mental status examinations</u> during the follow[up] visits with [the claimant's treating doctor,] Dr. Stefanos do not support the finding that [Plaintiff] would not be able to perform activities within a schedule." The ALJ further reasoned that although Plaintiff has moderate limitations in her ability to maintain attention and concentration, Plaintiff's mental health symptoms were not so severe as to preclude her from performing some work within her RFC.   <u>This reasoning [was] erroneous</u>. "Neither a reviewing judge nor the Commissioner is permitted to substitute his own expertise or view of the medical proof for ... competent medical opinion." *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008) (internal citation and quotation omitted).

*Page v. Berryhill*, No. 1:16-CV-0044 (MAT), 2018 WL 2329457, at *5 (W.D.N.Y. May 23, 2018) (Telesca, J.) (emphasis added, citations to record omitted).

Similarly, the Court here finds that the ALJ was not qualified to say that Spurling's opinions were inconsistent with the objective medical evidence, based solely on his own lay opinion.   Further, in that regard, the ALJ's decision to give less weight to Spurling's opinion than to the opinion of non-examining agency review psychologist Inman-Dunton was not adequately explained, and is not supported by substantial evidence, particularly since Inman-Dunton's opinion was based on an incomplete record.   Additionally, the ALJ should not have rejected Spurling's opinions, about the

9

number of hours that Plaintiff could work, or the number of absences from work that she would have per month, as being unexplained,[18] without first attempting to seek an explanation from Spurling. *See, e.g., Quirk v. Berryhill*, No. 18-CV-0858 (KHP), 2019 WL 1219120, at *6 (S.D.N.Y. Mar. 15, 2019) ("The ALJ's identification of a missing medical explanation, rather than constituting a valid reason for affording a treating physician's opinion less than controlling weight, triggered the ALJ's obligation to further develop the administrative record. If asked, Dr. LaGuerre might have been able to provide a medical explanation supporting his opinion that Plaintiff would miss two to three days of work per month[.]") (citations omitted). For all of these reasons, remand to the Commissioner is required for further administrative proceedings.

<u>The ALJ's Evaluation of Plaintiff's Credibility</u>

Plaintiff also maintains that the ALJ did not properly evaluate her credibility. However, because the Court is remanding the matter for further administrative proceedings that may moot this argument, the Court declines to consider the argument at this time.

The Court notes, however, that there are a number of apparent inconsistencies in Plaintiff's statements that should be explored on remand. For example, when Plaintiff applied for benefits she indicated that she had not received special education in school, but she told the ALJ that she had received special education.[19] Further, Plaintiff told the ALJ that she was not married, but she reportedly told Dr. Spurling multiple times that

---

[18] *See*, Transcript 27 ("Nor does Spurling explain his opinions as to such limitations.").
[19] Transcript 50, 267

10

she was married to her wife, Michelle.[20] Plaintiff told the ALJ, though, that Michelle was merely a roommate, who helped her with certain activities such as shopping, but who was not a friend.[21] Plaintiff also told the ALJ that one of the "main reasons" why she quit her job at the Finger Lakes Times newspaper was because she cannot get along with male co-workers, due to past abuse that she has experienced by men in her life (alluding to PTSD),[22] but she previously indicated that she "lost [her] job at [the] Finger Lakes Times for not taking authority," and that she "do[esn't] like being told what to do."[23] Plaintiff also told the ALJ that she has one child, a daughter,[24] but reportedly told Dr. Spurling that she has two daughters,[25] and reportedly told another therapist that she has one daughter and one son.[26] These apparent inconsistencies in basic biographical information are disconcerting, particularly since the non-exertional aspect of Plaintiff's disability claim is based almost entirely on her uncorroborated biographical statements to Dr. Spurling.

<u>Remand Solely for Calculation of Benefits is Not Warranted</u>

Plaintiff maintains that this action should be remanded solely for the calculation of benefits. However, based on the discussion above, the Court does not find that remand solely for calculation of benefits is clearly warranted. On remand, in addition to

---

[20] Transcript 42, 347, 351 ("She says things are going well with her wife, Michelle"), 352. On other documents Plaintiff has referred to Michelle as "life partner," *see, e.g.*, Transcript 831, but not roommate.
[21] Transcript 40, 42, 45-47; *see also, id.* at 47 ("I don't really have any friends."); 293-294, 298 (indicating that she does not "spend time with others").
[22] Transcript 58-59
[23] Transcript 300
[24] Transcript 42
[25] Transcript 916 ("She reports stress about her daughters as well. One daughter is pregnant and has moved out. She is worried about her. She says that she is having trouble with her other daughter and would like for her to move out.").
[26] Transcript 967 ("Patient had two children; daughter is now 16 and son 15.").

11

properly applying the treating physician rule, the Commissioner may want to further develop the record, such as by seeking clarification from Dr. Spurling on the points mentioned earlier,[27] and/or by obtaining a consultative psychological examination.[28]

CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings [#9] is granted, Defendant's motion [#13] is denied, and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to enter judgment for Plaintiff and close this action.

So Ordered.

Dated: Rochester, New York
June 19, 2019

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[27] The Court has already indicated that the ALJ should not have rejected certain opinions without seeking an explanation from Spurling. It is also unclear whether Spurling is aware of Plaintiff's past significant work history, and, if not, whether that information would change his opinion. If Spurling is aware of Plaintiff's work history, perhaps he could explain how it is that Plaintiff is completely disabled now, when she previously was able to work full time (or at least significantly more than he opines she can work) despite having the same psychological problems. *See*, Transcript 277 (worked 8 hours per day, five days per week); Transcript 279 (worked six hours per day six days per week); 278 (worked six hours per day, five days per week).

[28] *See, Orden v. Berryhill*, No. 17-CV-6455-FPG, 2018 WL 2440124, at *7 (W.D.N.Y. May 31, 2018) ("The varied treatment notes and the fact that Dr. Nussbaum's opinion is the sole assessment of Orden's ability to work does not "provide[ ] persuasive proof of disability," *Parker* [*v. Harris*], 626 F.2d [225,] 235 [(2d Cir. 1980)], and thus the Court declines to remand this matter solely for calculation of benefits. Nonetheless, Orden is entitled to a proper analysis of Dr. Nussbaum's opinion and, if appropriate, "good reasons" why it must be rejected. On remand, the Court suggests that the ALJ further develop the record as to Orden's physical RFC by reconsidering Dr. Nussbaum's opinion or requesting additional information from him, obtaining a consultative examination, or seeking a medical expert's opinion.").